IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
(Western Division)

| | | |
|---|---|---|
| **Janet L. Withrow, Administratrix** : | **CIVIL ACTION** |
| **Of the Estate of K. Dean Withrow,** : | |
| **Deceased** : | |
| : | |
| **Plaintiff** : | |
| : | |
| vs. : | |
| : | |
| **CSX Transportation Inc.** : | **No. 1:07-cv-418-MRB** |
| : | |
| : | |
| **Defendant** : | |
| : | |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
ON THE FEDERAL LOCOMOTIVE INSPECTION ACT**

Plaintiff[*], by her counsel, COFFEY KAYE MYERS & OLLEY, respectfully moves this Court to grant summary judgment in favor of the plaintiff, and against CSX Transportation, Inc., on the claims made pursuant to the *Federal Locomotive Inspection Act*. The following supports the granting of summary judgment:

---

[*] The injured employee and original plaintiff in this case was K. Dean Withrow. Mr. Withrow died in November, 2007. The Court has substituted his widow and Administratrix, Janet L. Withrow as the plaintiff. As used in this motion and the attached memorandum, Plaintiff will refer to Janet L. Withrow and Employee or Withrow will refer to K. Dean Withrow.

1

**General Facts**

1.      On October 15, 2006, Withrow was employed by CSX as a locomotive engineer.  (Admission 1)[1]

2.      Withrow was assigned to a road crew taking a train from Lima, Ohio to Cincinnati, Ohio.  (Admission 1)

3.      On October 15, 2006, per directions of the CSX Dispatcher, Withrow's train was stopped at Tipp City.  (Admission 2)

4.      The reason the train was stopped at that location was to enable a train located on a siding to enter the main track to proceed in the opposite direction.  (Admission 2)

5.      As soon as the other train passed him, Withrow was to continue the movement of his train.  (Dep. at 88)[2]

**The Accident**

6.      While the train was stopped at Tipp City, Withrow, who was located in the lead locomotive, went to the second locomotive.  (Dep. at 89)

7.      Withrow proceeded to the second locomotive to determine whether it had a properly operating radio and HTD.  (Dep. at 89)

8.      Withrow would have normally checked for the second locomotive radio when he first boarded the train, but he did not do so because he was busy "trying to fix the dynamic brake."  (Dep. at 89)

---

[1] CSX's Responses to Plaintiff's Requests for Admissions, Exhibit "A," referred to as "Admissions."
[2] Deposition of K. Dean Withrow, taken on October 9, 2007, Exhibit "B," referred to as "Dep."

9. However, when he arrived in Cincinnati, the Train Director was likely to ask him whether the second locomotive was equipped with a radio, and therefore he needed "to go back there and check, see if it had both of those." (Dep. at 89)

10. Withrow got his flashlight, gloves and jacket, exited the lead locomotive from the engineer's side door, walked out the lead unit catwalk, and crossed over to the second locomotive. (Dep. at 89-90)

11. Withrow had the flashlight in his right hand and was holding the handrail. His left hand was "bracing the engine." (Dep. at 90)

12. While Withrow was walking on the second locomotive's walkway, his legs suddenly came out from "underneath me and I fell on my tailbone and when I came down my left foot it landed, it cockeyed." He heard a pop in his knee and felt "lightening bolt" sensations from his lower back into both of his legs. (Dep. at 90-91)

13. After regaining his composure, and determining the extent of his injuries, Withrow examined the locomotive to see why he fell.

14. Withrow observed "a fairly large spot of oil . . . about three feet long and . . . two and a half feet wide. It covered the whole width of the catwalk [and it] looked like it was coming out of the doors by the compressor." (Dep. at 97-98)

15. Withrow testified that he had seen oil on locomotives at least 50 times before the date of his accident and 99% of the time the oil was located in the same spot, near the compressor. (Dep. at 98-99, 189-190)

16. In addition to the large puddle of oil, Withrow observed that the oil appeared to be coming from the other side of the door into the compressor compartment.

3

There were three one-quarter inch deep troughs.  The oil filled them and was running over the top of them onto the catwalk.  (Dep. at 111-112)

17. The oil was the same in color and texture as the oil that Withrow had previously observed on locomotives.  (Dep. at 188)

18. Withrow reported his accident to his conductor.  The conductor checked the area and agreed that there was oil on the walkway.  (Dep. at 112-113)

19. Withrow also "advised a dispatcher and his supervisors that he had been injured as a result of slipping on oil of the catwalk of locomotive FURX3028." (Admission 5)

20. Withrow observed the oil once again after returning from the hospital emergency room.  (Dep. at 114)

21. The oil appeared to cover a larger area.  ((Dep. at 114, 191)

22. Withrow also observed three employees with paper towels scrubbing and cleaning the oil from the locomotive walkway.  (Dep. at 114)

23. The second locomotive was inspected at the CSX Needmore Yard following Withrow's accident.  Oil was found on the walkway.  CSX employees photographed the oil on the walkway and then proceeded to clean it.  The employees used paper towels to wipe up a portion of the oil on the catwalk of locomotive FURX3028. (Admissions 7, 8, 9)

24. The CSX photos of the second locomotive and oil spots are attached as Exhibit "C."

4

**The Locomotive Was "In Use"**

25. The Federal Locomotive Inspection Act, 49 U.S.C. § 20701, applies to trains and locomotives that are "in use" and "on line."

26. Withrow's train "was on line in that it was a road train in the process of proceeding from Lima, Ohio to Cincinnati, Ohio." (Admission 3)

27. Withrow's train "was in use [as] it was a road train in the process of proceeding from Lima, Ohio to Cincinnati, Ohio." (Admission 4)

**The Railroad's Obligations Under Federal Law**

28. *The Federal Locomotive Inspection Act* (FLIA) is codified at 49 U.S.C. §§ 20701. It provides,

> "A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances--
>
> **(1)** are in proper condition and safe to operate without unnecessary danger of personal injury;
>
> **(2)** have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter;  and
>
> **(3)** can withstand every test prescribed by the Secretary under this chapter."

29. The Federal Railroad Administration has promulgated regulations pursuant to the FLIA. They are located, *inter alia*, at 49 C.F.R. Part 229.

30. Title 49, C.F.R. § 119, provides:

> "**Floors of cabs, passageways, and compartments shall be kept free from oil**, water, waste or any obstruction that creates a slipping, tripping or fire hazard. Floors shall be properly treated to provide secure footing." (emphasis added)

5

31. In *Lilly v. Grand T. W. R. Co.*, 317 U.S. 481, 485-486 (1943), the Supreme Court explained the scope of the FLIA and a railroad's obligations under it:

> i. "Negligence is not the basis for liability under the Act. Instead, **it "imposes upon the carrier an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate .** . . without unnecessary peril to life or limb." Southern Ry. Co. v. Lunsford, 297 U.S. 398, 401; Baltimore & Ohio R. Co. v. Groeger, 266 U.S. 521; cf. Brady v. Terminal Railroad Assn., 303 U.S. 10. Any employee engaged in interstate commerce who is injured by reason of a violation of the Act may bring his action under the Federal Employers' Liability Act, charging the violation of the Boiler Inspection Act. Moore v. C. & O. Ry. Co., 291 U.S. 205, 210-211; Great Northern Ry. Co. v. Donaldson, 246 U.S. 121; Baltimore & Ohio R. Co. v. Groeger, supra. **The Act**, like the Safety Appliance Act, **is to be liberally construed** in the light of its prime purpose, the protection of employees and others by requiring the use of safe equipment. Cf. Great Northern Ry. Co. v. Donaldson, supra; St. Louis, I. M. & S. Ry. Co. v. Taylor, 210 U.S. 281, 295-96; Louisville & Nashville R. Co. v. Layton, 243 U.S. 617, 621; Swinson v. Chicago, St. P., M. & O. Ry. Co., 294 U.S. 529, 531. And, **the Interstate Commerce Commission is broadly authorized to set the standards of compliance by prescribing "rules and regulations by which fitness for service [of locomotives, tenders and their appurtenances] shall be determined**," Napier v. Atlantic Coast Line, 272 U.S. 605, 612, provided that, it has been said, the Commission finds such are required to remove unnecessary peril to life or limb. United States v. B. & O. R. Co., 293 U.S. 454; cf. Southern Ry. Co. v. Lunsford, supra." (emphasis added)

32. In *Urie v. Thompson*, 337 U.S. 163, 190-191 (1949), the Supreme Court ruled that violation of a federal regulation was the same as violation of the FLIA. (*Urie* simply uses older nomenclature. The FLIA used to be called the Federal Boiler Inspection

Act) and the ICC duties have now been assigned to the Federal Railroad Administration (FRA).)

33. The Supreme Court held, "**Violations of the Commission's rules are violations of the statute**, giving rise not only to damage suits by those injured, *Lilly v. Grand Trunk R. Co.*, supra, but also to money penalties recoverable by the United States. 45 U. S. C. § 34." *Urie v. Thompson*, 337 U.S. 163, 190-191 (1949)(emphasis added)

34. A decade later this principle was reaffirmed by the Supreme Court in *Kernan v. American Dredging Co.*, 355 U.S. 426, 436 (1958). The Court explained that a violation of a regulation created absolute liability even where the injury was not the kind that the regulation sought to guard against.

35. The Supreme Court cited both *Urie* and *American Dredging* with approval in one of its most recent decisions to discuss the substantive aspects of the *Federal Employers' Liability Act*. *Conrail v. Gottshall*, 512 U.S. 532, 541-542 (1994).

36. The Honorable David Katz, of the United States District Court for the Northern District of Ohio, recently recognized the vitality of the rule that a railroad violates the FLIA by either using an unsafe locomotive or a locomotive that violates federal regulations. In *Reed v. Norfolk & Southern Ry.*, 312 F. Supp. 2d 924, 926 (D. Ohio 2004), Judge Katz wrote,

> "**A violation of the LIA results in strict liability**. Lilly, 317 U.S. at 485; see also Gowins v. Pennsylvania R.R. Co., 299 F.2d 431, 433 (6th Cir. 1963); Spade, No. 5:02-CV-129, 2004 U.S. Dist. LEXIS 1810, at *7. **A carrier may violate the BIA, and now the LIA, by failing to comply with regulations issued by the Federal Railroad Administration, or violating the broad duty imposed "on carriers to keep all parts and appurtenances of their locomotives in proper**

7

**condition and safe to operate without unnecessary peril to life or limb**." Mosco v. Baltimore & Ohio R.R., 817 F.2d 1088, 1091 (4th Cir. 1987)." (emphasis added)

37. The Honorable S. Arthur Spiegel, of this Honorable District Court, held in *Aldridge v. CSX Transportation Inc.*, S.D. Ohio (W.D.), Docket 06-cv-00128 (4-17-2007), that a slippery substance on a locomotive floor constitutes a violation of 49 C.F.R. § 229.119, and is thus, a violation of the *Federal Locomotive Inspection Act*, 49 U.S.C. § 20701. (Exhibit "D")

38. A violation of the FLIA creates absolute liability and any notice to the railroad or negligence is irrelevant. The violation of the FLIA and/or FRA regulations creates negligence as a matter of law. See, *O'Donnell v. Elgin, J. & E.R. Co.*, 338 U.S. 384, 390 (1949).

39. The Supreme Court has stated "Congress has thus, for its own reasons. imposed extraordinary safety obligations upon railroads and has commanded that if a breach of these obligations contributes in part to the employees' [injury or] death, the railroad must pay damages." *Coray v. Southern Pac. Co.*, 335 U.S. 520, 524 (1949).

40. In *Affolder v. New York, C. & St. L.R. Co.*, 339 U.S. 96, 98 (1950), the Supreme Court held: ". . . the [railroad's] duty under the Act is not based on the negligence of the carrier but is an absolute one requiring performance on the occasion in question". Proof of an FLIA violation is proof of negligence as a matter of law. *Lilly v. Grand Trunk Western R. Co.*, 317 U.S. 481, 485-486 (1943):

41. Contributory or comparative negligence and assumption of the risk are never defenses to a railroad's violation of the FLIA. This includes a violation of either the

8

general provisions or those specific provisions created by FRA regulations. *Corey v. S. Pacific* Co., 335 U.S. 520, 524 (1949).

**The Application Of The Law To The Uncontradicted Facts Of This Case**

42. The uncontradicted evidence is that on October 15, 2006, when Withrow walked on the catwalk or walkway of the second locomotive of his train, Locomotive FURX3028, it was covered with a three feet by two and one-half feet puddle of oil.

43. Title 49, C.F.R. § 229.119, prohibits a locomotive floor from having any "oil . . . or any obstruction that creates a slipping, tripping or fire hazard.

44. Locomotive FURX3028 was in violation of 49 C.F.R. § 229.119, in that the catwalk or walkway was covered with a slipping hazard, i.e., oil.

45. Locomotive FURX3028 was in violation of the general safety provisions of the FLIA because the three feet by two and one-half feet puddle of oil on the catwalk or walkway rendered the locomotive unsafe "to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701.

46. Locomotive FURX3028 was therefore in violation of the *Federal Locomotive Inspection Act* and CSX is absolutely liable to Withrow, through the plaintiff, his Administratrix, under the FELA and the FLIA.

47. Locomotive FURX3028 was therefore in violation of the *Federal Locomotive Inspection Act* and CSX is absolutely liable to Withrow, through the plaintiff, his Administratrix, for any injuries and damages caused, in whole or in part, from his accident caused by the oil. See, *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500 (1957).

48. Locomotive FURX3028 was therefore in violation of the *Federal Locomotive Inspection Act,* and therefore, CSX may not assert the defenses of contributory or comparative negligence and/or assumption of the risk.

WHEREFORE, partial summary judgment should be entered against CSX Transportation Inc., finding that CSX violated *The Federal Locomotive Inspection Act*, and in doing so, has violated the *Federal Employers' Liability Act* as a matter of law.

                Respectfully submitted,

                COFFEY KAYE MEYERS & OLLEY

                BY: s/ Lawrence A. Katz, Esq.
                    LAWRENCE A. KATZ
                    MICHAEL J. OLLEY
                    Counsel for Plaintiff
                    Two Bala Plaza, Suite 718
                    Bala Cynwyd, PA 19004
                    610-668-9800