IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
(Western Division)

| | | |
|---|---|---|
| Janet L. Withrow, Administratrix Of the Estate of K. Dean Withrow, Deceased | : : : : | CIVIL ACTION |
| Plaintiff | : : | |
| vs. | : : | |
| CSX Transportation Inc. | : : : | No. 1:07-cv-418-MRB |
| Defendant | : : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER
MOTION FOR PARTIAL SUMMARY JUDGMENT
ON THE FEDERAL LOCOMOTIVE INSPECTION ACT**

**I.     FACTS**

On October 15, 2006, Withrow was employed by CSX as a locomotive engineer and was assigned to a road crew taking a train from Lima, Ohio to Cincinnati, Ohio. (Admission 1)  On that day, per directions of the CSX Dispatcher, Withrow's train was stopped at Tipp City.  The reason the train was stopped at that location was to enable a train located on a siding to enter the main track to proceed in the opposite direction. (Admission 2)  As soon as the other train passed him, Withrow was to continue the movement of his train.  (Dep. at 88)

While the train was stopped at Tipp City, Withrow, who was located in the lead locomotive, went to the second locomotive to determine whether it had a properly

1

operating radio and HTD. (Dep. at 89) He would have normally checked for the second locomotive radio when he first boarded the train, but he did not do so because he was busy "trying to fix the dynamic brake." However, when he arrived in Cincinnati, the Train Director was likely to ask him whether the second locomotive was equipped with a radio, and therefore he needed "to go back there and check, see if it had both of those." (Dep. at 89)

Withrow got his flashlight, gloves and jacket, exited the lead locomotive from the engineer's side door, walked out the lead unit catwalk, and crossed over to the second locomotive. (Dep. at 89-90) He had the flashlight in his right hand and was holding the handrail. His left hand was "bracing the engine." (Dep. at 90) While Withrow was walking on the second locomotive's walkway, his legs suddenly came out from "underneath me and I fell on my tailbone and when I came down my left foot it landed, it cockeyed." He heard a pop in his knee and felt a "lightening bolt" sensation from his lower back into both of his legs. (Dep. at 90-91)

After regaining his composure, and determining the extent of his injuries, Withrow examined the locomotive to see why he fell. He observed "a fairly large spot of oil . . . about three feet long and . . . two and a half feet wide. It covered the whole width of the catwalk [and it] looked like it was coming out of the doors by the compressor." (Dep. at 97-98)

Withrow testified that he had seen oil on locomotives at least 50 times before the date of his accident and 99% of the time the oil was located in the same spot, near the compressor. (Dep. at 98-99, 189-190)

In addition to the large puddle of oil, Withrow observed that the oil appeared to be coming from the other side of the door into the compressor compartment. There were three one-quarter inch deep troughs. The oil filled them and was running over the top of them onto the catwalk. (Dep. at 111-112) The oil was the same in color and texture as the oil that Withrow had previously observed on locomotives. (Dep. at 188)

Withrow reported his accident to his conductor. The conductor checked the area and agreed that there was oil on the walkway. (Dep. at 112-113) Withrow also "advised a dispatcher and his supervisors that he had been injured as a result of slipping on oil of the catwalk of locomotive FURX3028." (Admission 5)

Withrow observed the oil once again after returning from the hospital emergency room. (Dep. at 114) The oil appeared to cover a larger area. ((Dep. at 114, 191) Withrow also observed three employees with paper towels scrubbing and cleaning the oil from the locomotive walkway. (Dep. at 114)

The second locomotive was inspected at the CSX Needmore Yard following Withrow's accident. Oil was found on the walkway. CSX employees photographed the oil on the walkway and then proceeded to clean it. The employees used paper towels to wipe up a portion of the oil on the catwalk of locomotive FURX3028. (Admissions 7, 8, 9) The CSX photos of the second locomotive and oil spots are attached as Exhibit "C."

## II. STANDARD OF REVIEW

"A party seeking to recover upon a claim, . . . may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." F.R.C.P. 56(a).

3

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." F.R.C.P. 56(c).

### III. LEGAL DISCUSSION

**CSX Had An Absolute Duty Under The Federal Locomotive Inspection Act To Provide A Safe Locomotive And To Comply With All C.F.R. Locomotive Rules**

A violation of the FLIA creates absolute liability and any notice to the railroad or negligence is irrelevant.

The scope of a railroad's obligations under the FLIA and its regulations are exceptionally broad. The Supreme Court has explained, "Congress has thus, for its own reasons, imposed extraordinary safety obligations upon railroads and has commanded that if a breach of these obligations contributes in part to the employees [injury or] death, the railroad must pay damages." *Coray v. Southern Pac. Co.*, 335 U.S. 520, 524 (1949).[1]

---

[1] This expansive statement reflects the Supreme Court's long history of liberally interpreting, both the *Federal Employers' Liability Act*, 45 U.S.C. §§ 51 et seq., and the FLIA, to effectuate the congressional intent of enacting a humanitarian and remedial statute to provide protection for railroad workers. *See e.g.*, *Swinson v. Chicago, St. P., M. and O.R. Co.*, 294 U.S. 529 (1935); *Brady v. Terminal R. Association of St. Louis*, 303 U.S. 10 (1938); *Tiller v. Atlantic Coast Line R. Co.*, 323 U.S. 574 (1945); *Urie v. Thompson*, 337 U.S. 163 (1949); *Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557 (1987); *Monessen SW. Ry. Co. v. Morgan*, 486 U.S. 330, 343 (1988) (Mr. Justice Blackmun and Mr. Justice Marshall, concurring and dissenting in part); *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994)

*The Federal Locomotive Inspection Act* (FLIA), codified at 49 U.S.C. §§ 20701, provides,

> "A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances--
>
> **(1)** are in proper condition and safe to operate without unnecessary danger of personal injury;
>
> **(2)** have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
>
> **(3)** can withstand every test prescribed by the Secretary under this chapter."

The violation of the FLIA and/or FRA regulations creates negligence as a matter of law. See, *O'Donnell v. Elgin, J. & E.R.* Co., 338 U.S. 384, 390 (1949). In *Affolder v. New York, C. & St. L.R.* Co., 339 U.S. 96, 98 (1950), the Supreme Court held: ". . . the [railroad's] duty under the Act is not based on the negligence of the carrier but is an absolute one requiring performance on the occasion in question". Proof of an FLIA violation is proof of negligence as a matter of law. *Lilly v. Grand Trunk Western R.* Co., 317 U.S. 481, 485-486 (1943) In *Lilly*, the Supreme Court explained the scope of the FLIA and a railroad's obligations under it:

> "Negligence is not the basis for liability under the Act. Instead, **it "imposes upon the carrier an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate .** . . without unnecessary peril to life or limb." Any employee engaged in interstate commerce who is injured by reason of a violation of the Act may bring his action under the Federal Employers' Liability Act, charging the violation of the Boiler Inspection Act. **The Act**, like the

5

> Safety Appliance Act, **is to be liberally construed** in the light of its prime purpose, the protection of employees and others by requiring the use of safe equipment. And, **the Interstate Commerce Commission is broadly authorized to set the standards of compliance by prescribing "rules and regulations by which fitness for service [of locomotives, tenders and their appurtenances] shall be determined**," provided that, it has been said, the Commission finds such are required to remove unnecessary peril to life or limb. (emphasis added; internal citations omitted)

In *Urie v. Thompson*, 337 U.S. 163, 190-191 (1949), the Supreme Court affirmed that violation of a federal regulation was the same as violation of the FLIA.[2] It held, "**Violations of the Commission's rules are violations of the statute**, giving rise not only to damage suits by those injured . . . but also to money penalties recoverable by the United States." *Id.* (emphasis added)

A decade later this principle was reaffirmed by the Supreme Court in *Kernan v. American Dredging Co.*, 355 U.S. 426, 436 (1958). The Court explained that a violation of a regulation created absolute liability even where the injury was not the kind that the regulation sought to guard against. The Supreme Court cited both *Urie* and *American Dredging* with approval in one of its most recent decisions to discuss the substantive aspects of the *Federal Employers' Liability Act*. *Conrail v. Gottshall*, 512 U.S. 532, 541-542 (1994). More recently, the Honorable David Katz, of the United States District Court for the Northern District of Ohio, recognized the vitality of the rule that a railroad violates the FLIA by either using an unsafe locomotive or a locomotive

---

[2] *Urie* simply uses older nomenclature. The FLIA used to be called the Federal Boiler Inspection Act) and the ICC duties have now been assigned to the Federal Railroad Administration (FRA).

that violates federal regulations. In *Reed v. Norfolk & Southern Ry.*, 312 F. Supp. 2d 924, 926 (D. Ohio 2004), Judge Katz wrote,

> "**A violation of the LIA results in strict liability**. Lilly, 317 U.S. at 485; see also Gowins v. Pennsylvania R.R. Co., 299 F.2d 431, 433 (6th Cir. 1963); Spade, No. 5:02-CV-129, 2004 U.S. Dist. LEXIS 1810, at *7. **A carrier may violate the BIA, and now the LIA, by failing to comply with regulations issued by the Federal Railroad Administration, or violating the broad duty imposed "on carriers to keep all parts and appurtenances of their locomotives in proper condition and safe to operate without unnecessary peril to life or limb**." Mosco v. Baltimore & Ohio R.R., 817 F.2d 1088, 1091 (4th Cir. 1987)." (emphasis added)

The Honorable S. Arthur Spiegel, of this Honorable District Court, held in *Aldridge v. CSX Transportation Inc.*, S.D. Ohio (W.D.), Docket 06-cv-00128 (4-17-2007), that a slippery substance on a locomotive floor constitutes a violation of 49 C.F.R. § 229.119, and is thus, a violation of the *Federal Locomotive Inspection Act*, 49 U.S.C. § 20701. (Exhibit "D")

**The Federal Regulations**

The FRA has specifically promulgated a regulation concerning the condition of locomotive cab floors. Title 49, C.F.R. § 119, provides:

> "**Floors of cabs, passageways, and compartments shall be kept free from oil**, water, waste or any obstruction that creates a slipping, tripping or fire hazard. Floors shall be properly treated to provide secure footing." (emphasis added)

`

Under the authority of *Urie*, *Kernan* and the other previously cited decisions, a locomotive is *per se* in violation of the FLIA if its floor contains "oil, water,

7

waste or any obstruction that creates a slipping, tripping or fire hazard." 49 C.F.R. § 229.119

If an accident occurs because of oil or some other slipping or tripping hazard on a locomotive floor, contributory or comparative negligence and assumption of the risk are not defenses. *Coray*, supra, 335 U.S. at 524.

## IV. ARGUMENT

The uncontradicited evidence, based on Withrow's deposition, CSX's Response to Plaintiff's Request for Admissions and the photographs taken by CSX, lead to the following factual conclusions:

1. On the date, and at the time, of Withrow's accident, the train and Locomotive FURX3028 were both "in use" and "on line," rendering them subject to the provisions of the *Federal Locomotive Inspection Act* and federal regulations promulgated pursuant to that Act and that concern locomotive safety.

2. Oil was located on the catwalk or walkway of the train's second locomotive, Locomotive FURX3028.

3. Withrow slipped and fell because of the oil on the catwalk or walkway.

Title 49, C.F.R. § 119, provides:

> "Floors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard. Floors shall be properly treated to provide secure footing."

The evidence is undisputed that the catwalk/walkway of Locomotive FURX3028 was covered with oil. The evidence is undisputed that the oil created a slipping hazard.

The evidence is undisputed that the catwalk/walkway of Locomotive FURX3028 did not provide Withrow with secure footing.

The evidence presents a single possible conclusion – Mr. Withrow was injured because CSX Locomotive FURX3028, the second locomotive in the train, was in violation of the FLIA. It violated the general requirement that locomotives "are in proper condition and safe to operate without unnecessary danger of personal injury" and the specific provision of §229.119 that "floors of cabs, passageways, and compartments . . . be kept free from. . . oil. . . or any obstruction that creates a slipping . . .hazard."

## V. CONCLUSION

Because the undisputed evidence supports the conclusion that the oil on the catwalk/walkway of Locomotive FURX3028 rendered it unsafe and created a slipping hazard, CSX violated the *Federal Locomotive Inspection Act*. Therefore, Plaintiff's Motion for Partial Summary Judgment should be granted and CSX should be deemed to have violated the FLIA.

        Respectfully submitted,

        COFFEY KAYE MYERS & OLLEY

        BY:   s/ Lawrence A Katz, Esq.
                MICHAEL J. OLLEY
                LAWRENCE A KATZ
                Counsel for Plaintiff
                Two Bala Plaza, Suite 718
                Bala Cynwyd, PA 19004
                610-668-9800