UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (AT CINCINNATI)

| | | |
|---|---|---|
| JANET L. WITHROW, Administratrix of the Estate of K. Dean Withrow, Deceased | : : : : | |
| Plaintiff | : : | Civil Action No. 1:07CV418-MRB |
| vs. | : : | (Judge Barrett) |
| CSX TRANSPORTATION, INC. | : : | |
| Defendant. | : | |

_____

**DEFENDANT, CSX TRANSPORTATION, INC.'S,
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**
_____

Plaintiff has moved this Court for judgment in her favor claiming the evidence before this Court establishes a violation of the Federal Locomotive Inspection Act.[1] However, Plaintiff has failed to prove a violation of the Act or, at a minimum, there is a genuine issue of material fact for a jury's determination and Plaintiff's motion must be denied.

**I.      OPERATIVE FACTS.**

CSX does not seriously dispute the facts as set forth in Plaintiff's motion. However, the "rest of the story" follows:

---

[1] 49 U.S.C. § 20701.

First, Mr. Withrow picked up the subject train in Lima, Ohio. It had been brought from Walbridge, Ohio.[2] The train had been brought from Walbridge to Lima by a CSX crew. The crew included A. J. Theuer, a locomotive engineer. Theuer, before leaving Walbridge, inspected both locomotives – CEFX 7121 and FURX 3028. Theuer noted the previously completed locomotive inspection reports noted no problems with the units.[3] Theuer himself made at least three trips up and down the walkways between the two units; he noticed nothing between the two units that would prevent one from walking safely.[4] He did not see any oil on the walkways.[5]

At the crew change, Withrow admits speaking with Theuer.[6] The engineer did not advise Withrow of any oil on the walkway.[7] Withrow, after accepting the units, walked the walkways himself.[8] Before leaving, Withrow inspected both units and found nothing wrong with either, much less any oil on the walkways.[9]

After Withrow's accident, various representatives of CSX inspected the unit. First, Henry Morgan and M. R. Kubiak traveled to the CSX Needmore Yard near Dayton, Ohio to inspect the units.[10] They both noticed and cleaned a small amount of oil from the walkway of the subject unit – FURX 3028. Both men visually inspected the area near the oil on the walkway and found no identifiable source of the oil from the unit.[11] This included along the sides of the locomotive compartment doors and

---

[2] Affidavit of A. J. Theuer.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] Withrow depo at 73 [referred to in deposition as A. J. "Thoran," or "the engineer."]
[7] *Id.*
[8] *Id.*
[9] Withrow depo at 75-8.
[10] Affidavits of Morgan and Kubiak.
[11] *Id.*

498468v1

2

determining if any oil was there or in any of the other "gutters" between those doors and the walkways. Neither man saw any signs of any oil coming from any part of the locomotive engine or appurtenances.[12] Although oil was found on the walkway, neither of these men could determine its source.

Later, the unit was taken to Queensgate Yards where it was again subject to inspections. At the Cincinnati Service Center, it was inspected to determine the source of oil leaks.[13] Nathan Scalf, employed at the Center, performed an inspection of FURX 3028.[14] Scalf found no source of the oil leaks; based on his inspection, he was confident there was no oil leak from the locomotive or any of its appurtenances. However, that did not end the endeavor. Jim Wardrop also inspected FURX 3028. His thorough inspection found evidence of any source of any oil leak on the locomotive. Attached to his Affidavit are the documents made at the time of the inspection documenting no source of the oil leak.[15]

CSX even checked prior records to determine if this unit had ever previously been reported as having an oil leak. As stated in the Affidavit of Charles Doughman, at no time before October 14, 2006 was an oil leak reported from FURX 3028 or any of its appurtenances. Doughman also authenticates various records from CSX documenting the inspection of FURX 3028.[16] No one who inspected that locomotive found a source of any oil leak on it.

---

[12] *Id.*
[13] Affidavit of Charles Doughman.
[14] Affidavit of Nathan Scalf.
[15] Affidavit of Jim Wardrop.
[16] Affidavit of Charles Doughman.

498468v1                                3

**A.     Summary Judgment Standard.**

Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact, and that the moving parties are entitled to judgment as a matter of law."[17]

The moving party bears the initial responsibility of "informing the District Court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, "if any," which is believes demonstrate the absence of a genuine issue of material fact."[18]  The movant may meet this burden by demonstrating the absence of evidence supporting one or more of the essential elements of the non-movant's claim [or defense].[19]  Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial."[20]

Once, and if, the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.[21]  However, it must be remembered the purpose of summary judgment is "not to resolve factual issues, but to determine if there are genuine issues of fact to be tried."[22]  Ultimately, the Court must determine "whether the evidence presents a

---

[17] Fed. R. Civ. P. 56(c).
[18] *Celotex Corp. v. Katrett*, 477 U.S. 317, 323 (1986).
[19] *Id.* at 232.
[20] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
[21] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).
[22] *Abercrombie & Fitch Stores, Inc. v. Am Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999).

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.[23]

Further, the Court must view the facts and any inferences reasonably drawn from them in the light most favorable to the party against whom the motion is made.[24]

No one actually saw Mr. Withrow's fall. Persons who inspected the locomotive, who were trained in that endeavor, and were specifically requested to look for the source of the oil leak found no explanation for it.

### B.  Not All Slip, Trip, and Falls on a Locomotive Equate with Liability Under the Locomotive Inspection Act.

Plaintiff apparently claims that because oil was on the walkway, CSX is strictly liable under the Locomotive Inspection Act. However, not all slip, trip, and falls on locomotives automatically equate with liability.

For example, in *McGinn v. Burlington Northern R.R. Co.*,[25] the trainman sued his employer because he tripped and fell over his own suitcase. The court, granting judgment to the railroad, noted plaintiff's claim that any "tripping hazard" violated 49 C.F.R. § 229.119(c). Rejecting that claim, the court held that tripping over one's own suitcase does not constitute a "tripping hazard" as defined in the regulations that are encompassed within the BIA.[26] In so holding, the *McGinn* court referred to the case of *Topping v. CSX Transportation, Inc.*[27] In that case, the Fourth Circuit cautioned:

> "Our holding does not imply that railroad employees may bring loose items on board with impunity. A worker who slips on an item that he brought with him – a candy wrapper – or a banana peel – may well be responsible for his

---

[23] *Anderson*, 477 U.S. at 251-52, see, also, *Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).
[24] *Kalamazoo Acquisitions, LLC v. Westfield Ins. Co., Inc.*, 395 F.3d 338, 342 (6th Cir. 2005).
[25] 848 F. Supp. 827 (N.D. Ill. 1994).
[26] 848 F. Supp. at 831.
[27] 1 F. 3d 260 (4th Cir. 1993).

498468v1

5

> accident. We need not settle such a question in this case. CSX did not establish that Topping had brought on board the metal object on which he slipped. The question of responsibility was appropriately left for the jury.[28]"

In *Topping,* he sued his employer after he slipped on a metal object that was lying on the floor and fell. The jury found in favor of Topping. In upholding that verdict, the Fourth Circuit noted there was, at a minimum, a jury question on the issue of the violation of the Boiler Inspection Act (now called the Locomotive Inspection Act).[29]

In *Gregory v. Missouri Pacific Railroad Co.*[30], the District Court gave a preemptory instruction to the jury that the mere presence of oil violated the Boiler Inspection Act. The United States Court of Appeals for the Fifth Circuit reversed. It noted:

> "The regulation is not violated by the mere presence of any oil, water or waste on a passageway; instead, the presence of such a substance is a violation only if it creates a slipping, tripping or fire hazard. To read the regulation otherwise is to impose an absurd result. For example, under *Gregory's* interpretation, the regulation would be violated every time a train operated in the rain. [footnote omitted.] Obviously, such an interpretation is illogical.[31]

The lessons from these two cases are that, first, not every slip, trip, and fall "hazard" is an automatic violation of the Locomotive Inspection Act. Further, one must prove the situation, in this case – the oil – presented an unnecessary peril to life or limb. As the cases cited above uniformly hold, these issues are normally left for a jury to resolve, not the Court.

---

[28] 1 F.3d at 261.
[29] It seems to us a classic jury question whether the presence of the loose metal object rendered the locomotive cab "unsafe to operate". *Topping*, 1 F.3d at 261.
[30] 32 F.3d 160 (1994).
[31] *Id.*

498468v1

6

This is especially true here with Plaintiff's fall was unwitnessed and no one, not even Plaintiff, testified the oil was present **before** his alleged fall. No one who inspected the unit found any identifiable source of the oil from the locomotive itself. Under these circumstances, an issue arises as to the source of the oil and whether, under the circumstances, the passageway could be "kept" free from oil.

In *Rivera v. Union Pac. R. R. Co.*,[32] Plaintiff slipped on an automatic brake valve handle left on the floor of the locomotive. Plaintiff contended the presence of the valve on the floor rendered the locomotive unsafe because it presented a dangerous slipping or tripping hazard in violation of § 23 of the Boiler Inspection Act. Rivera cited to 29 C.F.R. 5 229.119(c), as does Withrow. The railroad claimed there was a question of fact because Rivera at first claimed he stepped on an independent brake valve handle. The Court rejected the railroad's argument regarding the question of fact. However, in denying Plaintiff Rivera's motion for summary judgment, the court noted:

> "This fact notwithstanding, Rivera was this incident's sole eye witness. Thus, Union Pacific's liability in this case will turn on Rivera's credibility. This is uniquely in the province of the jury." "Affidavits are not a substitute for trial, and summary judgment is improper where an issue turns on credibility." [citation omitted.] "It is particularly wrong to base a summary judgment on the deposition of an interested party on facts . . . known only to him a situation where demeanor evidence might serve as real evidence to persuade a trier of fact to reject his testimony." [citation omitted.] Because this case turns on the credibility to Rivera, his motion for summary judgment on liability must be denied. *Ipso facto*, his motion for summary judgment with respect to causation is likewise denied.[33]

---

[32] 868 F. Supp. 294(D) (Colo. 1994).
[33] 868 F. Supp. at 299.

498468v1

7

Here, Withrow was the only witness to his slip and fall. Numerous qualified witnesses inspected the unit to locate the source of the oil leak and could not find one. If believed, the locomotive itself was not the source of the oil. If the locomotive itself was not, and no one, including Withrow, claims he saw oil until after the fall, a jury could reasonably infer the oil was not present at the time of Withrow's fall. Furthermore, the jury could infer Withrow himself was the source of the oil. As in *McGinn*, if plaintiff's own actions were the source of the oil, or if the oil did not present a slip, trip or fire hazard, summary judgment must be denied.

**C.** **The Mere Presence of Oil on the Walkway Does Not Mean CSX is Liable.**

49 C.F.R. § 229.119(c) states:

> "Floors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstructive that creates a slipping, tripping or fire hazard. Floors shall be properly treated to provide secure footing."

In sharp contrast to subsection (c), are subsections (a) and (b) which state:

> "(a) Cab seats shall be securely mounted and braced. Cab doors shall be equipped with a secure and operable latching device.
>
> (b) Cab windows of the lead locomotive shall provide an undisturbed view of the right-of-way for the crew from their normal position in the cab."

Subsections (a) and (b) do not contain the word "kept" as in subsection (c). Instead, subsections (a) and (b) mandate that the cab seats "shall be" securely mounted, etc., and cab windows of the lead locomotive "shall provide . . . ." In sharp contrast is the Federal Railroad Administration's insertion of the word "kept" in subpart (c), which governs Plaintiff's claim in his motion for summary judgment.

498468v1

8

When interpreting a federal regulation, a Court must apply general rules of statutory construction and start with the plain language of the regulation.[34]  A basic principle of statutory construction is that a Court will give an undefined term its "ordinary, "contemporary, common meaning."[35]  Moreover, a dictionary is an appropriate resource for gleaning that ordinary meaning.[36]

In its common use and ordinary meaning, "kept" means "to maintain in a certain state or condition."[37]  This term necessarily implies some act or actions.  Moreover, the FRA, by inserting the word "kept" in subsection (c) must have had some purpose in mind.  It did not merely state "shall be," as in subsection (a).  The word "kept" was inserted for a purpose and cannot be overlooked.  Plaintiff's interpretation of subsection (c) does exactly that.  It omits the word "kept."  Plaintiff's interpretation rewrites the statute such that subsection (c) reads like subsection (a).  Since "kept" in its ordinary interpretation necessarily implies some type of action, and the word was inserted purposefully, the mere presence of oil on the walkway does not mean CSX is liable.  The facts before this Court clearly show the walkway was "kept" free of oil.  Everyone who inspected the unit before the accident, including Mr. Withrow, noted no oil on the walkway.  Those who inspected the unit afterwards found no source of oil from the locomotive itself.  As such, before Withrow's accident, the walkway "kept" free from oil.  Moreover, the unit was "kept" in good mechanical order since no part of the locomotive was noted to be leaking oil after Withrow's accident.  Since there was no oil on the walkway before the incident, and no source of oil located from the unit itself, the

---

[34] *Time Warner Entm't. Co. v. Everest Midwest Licensee L.L.C.*, 381 F.3d 1039, 1050 (10th Cir. 2004).
[35] *Perrin v. United States*, 444 U.S. 37, 42 (1979).
[36] *Kayo Seiko Co., Ltd. v. United States*, 36 F.3d 1565, 1571 n. 9 (Fed. Cir. 1994).
[37] American Heritage Dictionary.

walkway and locomotive was "kept" free from oil and Plaintiff's motion for summary judgment must be denied.

## CONCLUSION

Plaintiff has failed to meet her burden of demonstrating no genuine issue of material fact. There is, at a minimum, a genuine issue of material fact. As such, Plaintiff's motion for summary judgment must be denied.

Respectfully submitted,

/s/ James F. Brockman
James F. Brockman (#0009469)
LINDHORST & DREIDAME
312 Walnut Street, Suite 3100
Cincinnati, OH  45202-4048
Telephone:   (513) 421-6630
Facsimile:   (513) 421-0212
Email:       jbrockman@lindhorstlaw.com
*Attorney for Defendant,*
*CSX Transportation, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and have mailed by United States Postal Service the document to the following non-CM/ECF participant:

Michael J. Olley, Esq.
Coffey Kaye Myers & Olley
Suite 718, Two Bala Plaza
Bala Cynwyd, PA  19004
mikeolley@comcast.net
*Attorney for Plaintiff*

/s/ James F. Brockman
James F. Brockman (#0009469)
Attorney at Law