# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Kimberly Dean Withrow                    Case No. 1:07cv418

    Plaintiff,                                 Judge Michael R. Barrett

vs.

CSX Transportation, Inc.

    Defendant.

## ORDER

This matter is before the court upon Plaintiff's motion for Partial Summary Judgment on the Federal Locomotive Inspection Act (Doc. 22), Defendant's opposition thereto (Doc. 25), and Plaintiff's reply (Doc. 33) and supplemental memorandum in support of the motion (Doc. 34).

    I.    Underlying Facts

The following facts are fairly drawn from the parties' filings. K. Dean Withrow was a locomotive engineer at CSX on October 15, 2006.[1] (Doc. 22 ¶ 1). On October 15, 2006, Withrow was assigned to a road crew taking a train from Lima, Ohio to Cincinnati, Ohio. (Doc. 22 ¶ 2). Before leaving, Withrow walked the walkways inspecting both locomotives and found nothing wrong with them. (Doc. 22-3, Withrow Dep. at 73, 75-78).

The CSX Dispatcher instructed the train to stop at Tipp City so that another train located on a siding could enter the main track and proceed in the opposite direction. (Doc. 22 ¶ 3-4). While the train was stopped, Withrow left his post at the lead locomotive to see if the second locomotive had a properly operating radio and HTD. (Doc. 22 ¶ 6-7).

---

[1] Unfortunately, Mr. Withrow died during the pendency of this litigation. With permission from the Court his widow and administratrix of his estate, Kimberly Dean Withrow, has been substituted as the party plaintiff.

Withrow crossed over to the second locomotive via the lead unit catwalk. (Doc. 22 ¶ 10). He had a flashlight in his right hand and also held on to the handrail, and his left hand was bracing the engine. (Doc. 22 ¶ 11). Withrow fell and landed on his tailbone as he was walking on the second locomotive's walkway. (Doc. 22 ¶ 11). His left foot cockeyed when it landed, he also heard a pop in his knee and felt lightening bolt sensations from his lower back through both of his legs. (Doc. 22 ¶ 11).

Withrow examined the locomotive after his fall and observed, "a fairly large spot of oil...about three feet long and...two and a half feet wide. It covered the whole width of the catwalk [and it] looked like it was coming out of the doors by the compressor." (Withrow Dep. at 97-98). Withrow stated that he had seen oil on locomotives at least 50 times before the accident and 99% of the time the oil was located near the compressor. (Doc. 22 ¶ 15). The oil appeared to be coming from the other side of the door into the compressor compartment, filling three one-quarter inch deep troughs and flowing over onto the catwalk. (Doc. 22 ¶ 16). Withrow reported the accident to his conductor, who confirmed that there was oil on the walkway, and also to a dispatcher and his supervisors. (Doc. 22 ¶ 18-19). Prior to October 14, 2006, no oil leak from the second locomotive FURX 3028 or any of its appurtenances had been reported. (Doc. 29, Doughman Aff.)

After returning from the hospital emergency room, Withrow observed three employees scrubbing the oil from the walkway at the CSX Needmore Yard, and noted that the oil appeared to cover a larger area. (Doc. 22 ¶ 21-23). CSX employees photographed the oil prior to cleaning it. (Doc. 22 ¶ 23). The CSX employees did not see any signs of oil coming from any part of the locomotive engine or appurtenances and could not determine its source. (Docs. 31, 32). Further inspections at the Cincinnati Service Center did not reveal a source for the oil leak. (Docs. 27, 28).

In the motion for partial summary judgment, Plaintiff contents that CSX violated the Federal Locomotive Inspection Act and therefore violated the Federal Employers Liability Act as a matter of law.

II. Legal Analysis

A. Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact, but then the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita*, 475 U.S. at 587. However, the nonmoving party may not rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324. The substantive law of the case determines what facts are material and whether a higher burden of proof is required for a particular element. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Jarrett v. CSX Transp., Inc.*, 2008 U.S. Dist. LEXIS 86256 (N.D. Ohio Sept. 10, 2008) *citing Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

B.  FELA/LIA

The Federal Employers' Liability Act ("FELA") governs employee recovery for work related injuries within the railroad industry. 45 U.S.C. §§ 51-60. The "prime purpose" of the FELA is the "protection of railroad employees." *Urie v. Thompson*, 337 U.S. 163, 191, 69 S. Ct. 1018, 93 L. Ed. 1282 (1949) (citations omitted). The FELA creates a statutory cause of action allowing an employee to recover for employer negligence that "in whole or in part" causes an employee's injury. 45 U.S.C. § 51. To supplement the FELA and to "facilitat[e] employee recovery," Congress enacted the Locomotive Inspection Act ("LIA"). *Urie,* 337 U.S. at 189, 191; 49 U.S.C. § 20701. An employee injured due to a violation of the LIA may bring his action under the FELA by showing that 1) the employer violated a statutory provision of the LIA or safety regulations promulgated under LIA authority, and 2) the employee suffered injuries "resulting in whole or in part" from the statutory violation. 45 U.S.C. § 51; *Richards v. Consolidated Rail Corporation*, 330 F.3d 428, 432 (6th Cir. 2003; *Lilly v. Grand Truck Western R.R. Co.*, 317 U.S. 481, 485, 63 S. Ct. 347, 87 L. Ed. 2d 411 (1943); *Reed v. Norfolk & Southern* Ry., 312 F. Supp. 2d 924, 926 (N.D. Ohio 2004).

*The Locomotive Inspection Act*, 49 U.S.C. §§ 20701 provides,

A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances--

(1) are in proper condition and safe to operate without unnecessary danger of personal injury;

(2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and

(3) can withstand every test prescribed by the Secretary under this chapter.

The LIA applies to trains and locomotives that are "in use" and "on line." 49 U.S.C. § 20701. CSX admitted that Withrow's train was in use (Doc. 22, Exh. A at ¶4) and on line

(Doc. 22, Exh. A at ¶3). The Act covers "any employee engaged in interstate commerce who is injured by reason of a violation of the Act." *Lilly v. Grand T.W.R. Co.*, 317 U.S. 481, 485 (1943). The Supreme Court and Congress have emphasized that the statute is to be liberally construed in light of its prime purpose to protect employees and others by requiring the use of safe equipment. *Id.* at 485-86.

The Federal Railroad Administration has promulgated regulations pursuant to the LIA. See 49 C.F.R. Part 229. The Supreme Court held that a violation of a federal regulation constitutes a violation of the statute. *Urie v. Thompson*, 337 U.S. 163, 190-91 (1949). Violations of the LIA and/or regulations results in negligence as a matter of law. *O'Donnell v. Elgin, J. & E.R. Co.*, 338 U.S. 384, 390-91 (1949). Contributory or comparative negligence and assumption of the risk are never defenses to a LIA violation. *Lilly* 317 U.S. 481 at 491.

Title 49, C.F.R. § 119(c), states:

"Floors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard. Floors shall be properly treated to provide secure footing."

Plaintiff argues that CSX violated the LIA as a matter of law. Plaintiff relies on *Aldridge v. CSX Transportation, Inc.*, No. 1:06cv128, slip op. (S.D. Ohio April 17, 2007)(J. Spiegel), to support its contention that, as a matter of law, a slippery substance on a locomotive floor constitutes a violation of the LIA. However, Judge Spiegel did not make such a clear holding. Instead, he found that it was undisputed that CSX violated regulation 49 C.F.C. §229.119 since CSX did not dispute that there was ice, caused by a water leak, on the floor and that the ice caused Plaintiff's injury. In *Aldridge* the issue in dispute was whether the locomotive was "in use" and "on line." Those issues are not in dispute here and in this case CSX does dispute that the oil was a slipping hazard. However, for the

reasons set forth below, the Court finds that there is no genuine issue of material fact in dispute.

CSX does not dispute the presence of oil on the walkway of the locomotive or that Withrow was injured, but argues that "not all slip, trip, and falls on locomotives automatically equate with liability." (Doc. 26). CSX argues that the locomotive was free of oil when Withrow began his shift and no source for the leak could be located. Defendant states that the jury could infer that Withrow was the source of the oil and, thus, there would be no regulation violation.

CSX relies on *McGinn v. Burlington Northern R.R. Co.*, 848 F.Supp. 827 (N.D. ILL. 1994) and *Topping v. CSX Transportation, Inc.*, 1 F.3d 260 (4th Cir. 1993) to support its argument. The *McGinn* decision held that tripping over one's own suitcase does not constitute a tripping hazard under the regulations and referenced the notion that employees bringing loose items on board a train would potentially be responsible for his own accident. *McGinn v. Burlington Northern R.R. Co.*, supra. In *Topping v. CSX Transportation, Inc.*, the Court cautioned that "[a] worker who slips on an item that he brought with him - a candy wrapper - or a banana peel - may well be responsible for his accident." 1 F.3d at 261; *see also Reed v. Norfolk & Southern Ry.,* 312 F. Supp.2d 924 (6th Cir. 2004).

However, these cases are distinguishable. Unlike *McGinn* and *Topping*, there is no evidence to support the assertion that Withrow brought the oil onto the train or that he spilled the oil onto the walkway. On a motion for summary judgment, the nonmoving party must set forth specific facts of a substantial nature, and conclusionary or speculative statements are insufficient to raise genuine issues of material fact. Fed. R. Civ. P. 56(e). Although CSX has presented evidence that the source of the leak could not be found and

two employees testified, via affidavit, that they were confident that there was no oil leak from the locomotive (Docs. 27 and 28), there is no evidence to suggest that Withrow was the cause of the oil and CSX does not dispute the existence of the oil on the walkway.

In addition, CSX relies on *Gregory v. Missouri Pacific Railroad Company*, 32 F.3d 160, 162-65 (5th Cir. 1994), where the Fifth Circuit held that an employee who slipped on oil spilled on a locomotive walkway could not automatically recover under the LIA. The court held that the plaintiff could not recover without the jury first finding that the presence of oil presented an actual and unnecessarily dangerous slipping hazard. *Id. See also Jarrett v. CSX Transp., Inc.*, 2008 U.S. Dist. LEXIS 86256, *13 (N.D. Ohio Sept. 10, 2008). *But see Kehdi v. BNSF Ry. Co.*, 2007 U.S. Dist. LEXIS 76278, 12-13 (D. Or. Oct. 11, 2007)(the Court granted Plaintiff's motion for partial summary judgment where the oil on the floor violated 43 C.F.R. § 229.119(c), and thus the LIA, where, in addition to the plaintiff's testimony regarding how he fell, he provided photographs showing an oily residue on the floor with evident slip markings within the oil).

However, this case is less like *Gregory* and more like *Kehdi*. In *Gregory*, an employee testified that the oil appeared "crusty looking," more like a "dirty grease" than slippery oil, and that there were "no apparent marks of anybody slipping in this oil or grease." 32 F.3d at 165. In *Kehdi*, the Judge distinguished *Gregory* in finding that the photographic evidence showed evident slip markings within the oil. Here, in addition to Plaintiff's uncontradicted testimony that he slipped on the oil, the photographs show the oil on the walkway with foot prints emanating from it. The footprints indicate that the oil was thick enough to tranfer to the bottom of one's shoes and back again onto the walkway for numerous steps. Also, as the photographs show, the oil covered the entire width of the walkway making it difficult to walk, especially at night, around the spill. Defendant has

7

offered no affirmative evidence or testimony contradicting the evidence provided by Plaintiff. In addition, Defendant admits that the area in question needed to be cleaned. See Doc. 22-3, ¶9 and Doc. 31, 32. Accordingly, the Court finds that the record supports Plaintiff's contention that the oil on the walkway constituted a slipping hazard, one in which Plaintiff actually slipped and was injured on, in violation of Title 49, C.F.R. § 119(c).

Defendant also argues that granting summary judgment is improper when a railroad's liability hinges solely on an interested party's credibility, something uniquely in the province of the jury, citing *Rivera v. Union Pac. R. R. Co.*, 868 F. Supp. 294, 299 (Colo. 1994). However, here the evidence is so one sided that Plaintiff must prevail as a matter of law.

The Court also does not find merit in Defendant's selective reading of the regulation and focus on the word "kept." Defendant argues that the lack of oil before the accident and failure to identify a source on the locomotive leaking oil demonstrates that the locomotive was kept in good mechanical order and that the walkway was "kept" free from oil. Both facts fail to address the relevant issue of whether oil constituting a slipping or tripping hazard existed on the walkway at the time of the accident. As Title 49, C.F.R. § 119(c) makes clear, walkways "shall be kept free from oil...that creates a slipping, tripping or fire hazard." Although the record does not indicate the precise source of the oil, under the strict liability theory required for the LIA, Plaintiff does not have to show the oil's source, merely that it was present on the walkway and constituted a slipping hazard.

    C.    Conclusion

Thus, for the reasons set forth above, there is no genuine issue of material fact as CSX violated the LIA and, in doing so, violated the FELA. Plaintiff's motion for partial summary judgment is GRANTED.

**IT IS SO ORDERED.**

                                             *s/Michael R. Barrett*
                                             Michael R. Barrett, Judge
                                             United States District Court